UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TERRY LaCROIX,

    Plaintiff,

    v.                                            CAUSE NO. 3:22-CV-985-RLM-MGG

RON NEAL, et al.,

    Defendants.

## OPINION AND ORDER

Terry LaCroix, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. The court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Because Mr. LaCroix is proceeding without an attorney, the court must give his allegations liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Mr. LaCroix is an inmate at Indiana State Prison. He alleges that on or about December 5, 2020, he was in his cell when Sergeant Stone (first name unknown) passed by while making his rounds. Mr. LaCroix asked Sgt. Stone "about getting my

clothes & property that had been stolen." He claims he was very cold because it was winter, a window was broken in the cell house, and he only had a jumpsuit, a bed mat, and a sheet for warmth. He claims Sgt. Stone "started antagonizing me" in some unspecified way. Mr. LaCroix asked to speak with Captain Dustin or Lieutenant Wins (first names unknown) but Sgt. Stone said no. At that point, "[t]hings became heated." He claims Officer Harris then arrived, "looked at the situation and started yelling at [Sergeant] Stone to leave the range." He claims just then his "lightbulb started to fall" out of its socket. He caught the lightbulb and turned around, at which point Ofcr. Harris and Sgt. Stone both pulled out their mace and ordered him to put the lightbulb down. He complied and then "started walking with [his] back to the officers." He claims Sgt. Stone gave him an order that he couldn't hear. When he turned his head to ask him to repeat it, Sgt. Stone sprayed him in the face with mace.

Mr. LaCroix was secured with handcuffs and legal shackles and escorted to the showers. While he was being transported he "tried to talk to Lt. Wins and even ask her to get Capt. Dustin." However, Officer Allman (first name unknown) allegedly stood between Mr. LaCroix and Lt. Winn, telling Mr. LaCroix that he was the "boss" with a smirk on his face. At that point, Lt. Wins said "get him out of here." Sgt. Stone and an unnamed female officer continued escorting him, at which point Mr. LaCroix said to Sgt. Stone, "You['re] going to assault me," and the sergeant allegedly responded, "Wait & see." When they got to the showers, the female officer left. Mr. LaCroix claims Sgt. Stone then placed him under "scalding hot water" to intentionally hurt him, and he remained there for approximately 10 minutes, causing the mace to

2

burn his face and body. When Mr. LaCroix complained, Sgt. Stone allegedly "slammed me up against the shower wall."

Officer Washington (first name unknown) arrived, and Mr. LaCroix told her Sgt. Stone had injured him, to which she allegedly responded, "good." Mr. LaCroix was escorted in dripping wet clothes to a holding cell, even though it was 33 degrees outside. He was placed in the cell, at which point Sgt. Stone allegedly began "antagonizing" him again. Another officer told Sgt. Stone to leave him alone. Mr. LaCroix was allegedly left in the cell for three hours, still wet. He claims it was very cold because a door was open and he was barefoot. Ultimately Mr. LaCroix was taken back to his cell. Based on these events, he sues Warden Ron Neal, Sgt. Stone, Lt. Wins, Capt. Dustin, Ofcr. Washington, Ofcr. Allman, and the unnamed female officer who escorted him to the shower. Mr. LaCroix seeks $8 million in damages and other relief.

Under the Eighth Amendment, correctional officers can't subject inmates to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry into whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury the prisoner suffered. *Id.*

Giving Mr. LaCroix the inferences to which he is entitled at the screening stage, he has plausibly alleged that Sgt. Stone used force, not in a good-faith effort to restore order, but maliciously to cause him harm. Specifically, Mr. LaCroix alleges that even though he complied with the order to put down the lightbulb, Sgt. Stone sprayed him with mace. It appears from the complaint that the sergeant gave an order that Mr. LaCroix didn't comply with, but Mr. LaCroix claims he couldn't hear the order and was merely asking him to repeat it when he was sprayed. Mr. LaCroix further claims Sgt. Stone intentionally placed him in scalding water to exacerbate the effect of mace, slammed him into the shower wall even though he was retrained with handcuffs and shackles, and placed him dripping wet in a holding cell to cause him further discomfort. Further factual development might show that Sgt. Stone didn't act maliciously, but Mr. LaCroix has alleged enough to proceed past the pleading stage against this defendant.

The complaint has no factual content to plausibly suggest that Capt. Dustin was personally involved in these events, and a defendant can't be held liable for damages solely because he supervises other correctional staff. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009). The same analysis applies to Warden Neal, who isn't alleged to have used excessive force against Mr. LaCroix or otherwise been personally involved in these events.

The complaint has too little factual content from which the court could plausibly infer that Lt. Wins used excessive force against Mr. LaCroix or condoned

4

the use of excessive force by Sgt. Stone. Mr. LaCroix faults her for not investigating the situation before telling Sgt. Stone to "get him out of here," but at that point Mr. LaCroix had been sprayed with mace and was in the process of being taken to a shower for detoxification. The court can't plausibly infer that Lt. Wins violated Mr. LaCroix's constitutional rights by telling Sgt. Stone, in effect, that they should continue on their way. The "most that can be said" is that she didn't "go beyond the requirements of [her] job" to intervene on Mr. LaCroix's behalf, but this isn't a basis for imposing liability under 42 U.S.C. § 1983. Burks v. Raemisch, 555 F.3d at 593.

The only involvement of the unnamed female officer was to help escort Mr. LaCroix to the shower. State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's rights through the use of excessive force but fail to do so" may be held liable. Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). Mr. LaCroix makes clear that this officer had already left when Sgt. Stone placed him under scalding water and slammed him against the shower wall. Perhaps the unnamed officer should have stayed and monitored the situation after Sgt. Stone made the "wait and see" comment, but "the mere failure . . . to choose the best course of action does not amount to a constitutional violation." Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002). Mr. LaCroix does not allege, nor can it be plausibly inferred, that she left with the intent of facilitating the use of force. She can't be held liable for damages under these circumstances.

Likewise, Ofcr. Allman's only alleged involvement was to stand between Lt. Wins and Mr. LaCroix when he tried to speak with her. There is no factual content

to plausibly suggest that this officer participated in the use of excessive force or was present when Sgt. Stone allegedly used excessive force against him. At most Mr. LaCroix alleges the officer exacerbated the situation by "smirk[ing]" at him, which might have been unprofessional, but does not amount to a constitutional violation. *See* Leiser v. Kloth, 933 F.3d 696, 703 (7th Cir. 2019) ("not every psychological discomfort a prisoner endures amounts to a constitutional violation"); Beal v. Foster, 803 F.3d 356, 358 (7th Cir. 2015) ("[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment."). For the same reason, Ofcr. Washington's alleged comment "good" after Mr. LaCroix said Sgt. Stone had hurt him, while perhaps insensitive or unprofessional, doesn't amount to a constitutional violation. There are too few allegations to plausibly suggest this officer was present during the events with Sgt. Stone and had a reasonable opportunity to intervene or that she was otherwise personally involved in the violation of his constitutional rights. Mr. LaCroix won't be allowed to proceed on a claim for damages against these defendants.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Sergeant Stone (first name unknown) in his personal capacity for monetary damages for using excessive force against him on or about December 5, 2020, by spraying him with mace, placing him in a scalding shower, slamming him against the shower wall, and placing him in a cold holding cell when he was dripping wet with the intention of causing him harm;

6

(2) DISMISSES Ron Neal, Wins, Allman, Washington, Escorting Female CO, and Dustin as defendants;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Stone (first name unknown) at the Indiana Department of Correction and to send him a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(6) ORDERS Sergeant Stone to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on January 17, 2023

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT